## JONES *et al.* v. CLOW *et al.*

### *(Circuit Court, N. D. Illinois. July 22, 1889.)*

**PATENTS FOR INVENTIONS—PATENTABILITY—WANT OF NOVELTY.**

Letters patent No. 208,376. granted September 24, 1878, describe an "improvement in heating apparatus," consisting of a portable heater or fire-pot mounted upon an oil reservoir by means of standards projecting upwards from the top of the reservoir, and a burner placed thereunder, consisting of a spiral coil of iron pipe, with an inlet for combustible fluid at the top, and a burning jet in the center of the bottom of the coil, which is surrounded by a metal jacket with openings at the lower part to admit air. Air is also introduced into the upper part of the reservoir to force the fluid through a pipe leading from near the bottom of the reservoir to the top of the burner, where it is connected with the top of the coil. The flame from the jet in passing upward through the coil vaporizes the fluid as it passes from the inlet pipe to the jet, and produces a heating flame in the fire-pot. *Held*, that the combination was a mere aggregation of old parts of two prior patents,—one granted in June, 1878, with a fire-pot and burner mounted on an oil reservoir, and the other granted in March, 1868, with the reservoir at the side, instead of under the burner and fire-pot, and is void for want of novelty.

In Equity.

Bill in equity by Thomas J. Jones and others against James B. Clow and others, for injunction and an accounting for infringement of patent for an "improvement in heating apparatus."

*John G. Elliott* and *W. A. Reading*, for complainants.

*West & Bond*, for defendants.

BLODGETT, J. The bill in this case asks for an injunction and accounting by reason of the alleged infringement of patent No. 208,376, granted September 24, 1878, to Thomas Connelly, for an "improvement in heating apparatus." In his specification the patentee says:

"My invention consists of a portable heater or fire-pot, serviceable for plumbers and others, for heating solder, soldering-irons, and other articles, and for other purposes. I employ a fire-pot, an oil or fluid reservoir, and an

v.39F.no.14—50

interposed burner, which latter consists of a jacket depending from the fire-pot, and inclosing a coil, whose inlet from the reservoir is at top, and outlet or jet at the bottom, under the central space of the coil; the several parts being constructed and operating as will be hereinafter more fully set forth."

The patentee arranges these parts by mounting the fire-pot upon the oil reservoir by means of standards projecting upwards from the top of the reservoir, and placing the burner underneath the fire-pot,—that is, between the fire-pot and top of the reservoir,—or, as the patentee expresses it, "the burner depends from the opening in the bottom of the fire-pot, so that the flame will pass from the burner into the fire-pot or heater." The burner consists of a spiral coil of iron pipe, with an inlet for the combustible fluid at the top of the coil, and the burning jet in the center of the bottom of the coil, this burning coil being surrounded by a jacket of sheet iron or other metal, with openings at the lower part for the admission of air. The combustible fluid—gasoline, alcohol, or any other suitable hydro-carbonic fluid—is placed in the reservoir, into the upper part of which atmospheric air is forced so as to produce sufficient pressure upon the fluid to force it through a pipe, which leads from near the bottom of the reservoir to the top of the burner, where it is connected with the top of the coil. The flame from the burning jet passing upwards through the coil heats the coil so as to vaporize the burning fluid in its passage from the inlet pipe to the jet, and thereby produces a strong heating flame in the fire-pot. The patent contains two claims, as follows:

"(1) The reservoir, A, and fire-pot, D, in combination with the burner, E, consisting of the jacket, G, depending from said pot and inclosing a coil, F, whose inlet is at top, and communicates with a pipe leading to the reservoir, and whose outlet or jet is at bottom, under the central space of the coil, all substantially as described. (2) The fire-pot, D, supported on and connected to the reservoir, A, and supporting the depending burner, E, which communicates with the reservoir in the manner described, all combined and forming together an improved portable heating apparatus."

The defenses interposed are: (1) That the patent is void for want of novelty, and because of the non-patentability of the combination shown in the claims; (2) that defendant does not infringe.

The patent contains the following disclaimer at the foot of the specifications:

"I am aware that it is not new to construct burners, with surrounding jackets, and of coils to which oil or fluid is supplied under pressure, wherefore I disclaim such features."

In considering the question of patentability, we start with the admission from the patentee himself, that both the coil-burner and the means shown for forcing the burning fluid into the coil, and the jacket of the burner, are old. The proof also shows that a fire-pot, essentially like that shown in this combination, is old. Defendant has put into the record a large number of prior devices for plumbers' or tinners' furnaces, and heating furnaces, which show oil-pots, or oil reservoirs, burners, and fire-pots, operating together to produce the result produced by the complainant's device. In other words, it may be considered, as proven in this

case, that oil reservoirs with a device to force the oil or other combustible fluid to the burners by means of compressed air were old, that jacketed coil-burners were old, and fire-pots were old, at the time the patent was applied for. There is also shown in the proof a patent granted in June, 1878, to Jesse Burgess, for a furnace for heating soldering-irons, wherein the fire-pot and burner were mounted on an oil reservoir. It is true that Burgess' furnace was arranged to heat by means of wick-burners extending up into the fire-pot or heat receiver from the oil-pot, but I do not see that the means by which Burgess produces the heat for his furnace affects the question as to the combination of operative parts in this patent. The patent in suit may then be said, in the light of the proof, to consist of an old oil reservoir with an old coil-burner and old fire-pot mounted upon it, by which arrangement of those old parts or elements together a more portable and convenient heater is produced for practical purposes. But I think the proof fails to show that these separate elements, when arranged or combined as shown in the complainant's patent, produce any new result by reason of their new juxtaposition; assuming for the purpose of the argument that it was new with Connelly to mount the fire-pot or burner on the reservoir. The patent granted to J. S. Hull in March, 1868, was intended to use gasoline, as does the complainant's patent, for heating soldering-irons. It shows a reservoir arranged at the side of the burner and fire-pot, and coil-burner dependent from the bottom of the fire-pot, and the device for forcing the burning fluid into the burner by compressed air. It only differs in the arrangement of its operative parts from the complainant's device in the fact that the oil-pot or reservoir stood at the side, instead of standing under, the burner and fire-pot. But it was a device for heating soldering-irons by the same instrumentalities as that of the complainant, and these instrumentalities operated in the same manner in the Hull device as in the device of the complainant. Then, with the fact that Burgess had at an earlier date mounted his wick-burner and fire-pot on an oil reservoir, I do not see that this patentee has accomplished any new result.

The patent seems to me to be clearly within the rule laid down by the supreme court of the United States in *Hailes* v. *Van Wormer,* 20 Wall. 368:

"All the devices of which the alleged combination is made are confessedly old. No claim is made for any one of them singly, as an independent invention. It must be conceded that a new combination, if it produces new and useful results, is patentable, though all the constituents of the combination were well known, and in common use before the combination was made. But the result must be a product of the combination, and not a mere aggregation of several results, each the complete product of one of the combined elements. Combined results are not necessarily a novel result, nor are they an old result obtained in a new and improved manner. Merely bringing old devices into juxtaposition, and there allowing each to work out its own effect without the production of something novel, is not invention."

And the same doctrine was applied by the supreme court in *Reckendorfer* v. *Faber,* 92 U. S. 356, and *Pickering* v. *McCullough,* 104 U. S. 317; the court, in *Reckendorfer* v. *Faber,* saying by Mr. Justice HUNT:

"A combination, to be patentable, must produce a different force, or effect, or result, in the combining of forces or processes from that given by their separate parts. There must be a new result produced. If not so, it is only an aggregation of separate elements."

More might be quoted from the authorities to the same point, but I think it sufficiently appears, from the facts in this case, that none of the separate elements in the complainant's combination produce any new result by virtue of such combination. The reservoir supplied the oil or burning fluid, the coil-burner produced the flame, and the fire-pot afforded facilities for heating the soldering-iron, or melting solder, in the same manner in the older art as these respective parts do in the complainant's combination. They produce no new result. It is true, as I have already said, it is a more convenient arrangement of those operative parts than is shown in the older art, except what is shown in the Burgess patent; and, waiving the question as to whether the complainant's patent is or is not defeated for want of novelty by reason of the Burgess patent, I think it sufficient to say that I find in the complainant's patent only an aggregation of old parts producing no new result, and hence no patentable combination. The patent in question is in all its essential particulars like the patent involved in the case of *Preston* v. *Manard*, heard in this court in January, 1882, and which, after a reissue, was before the supreme court, and is reported in 116 U. S. 661, 6 Sup. Ct. Rep. 695. There the patentee had combined a truck, a hose-reel mounted on the truck, a hose, and a standard to hold the hose in position to operate as a lawn-sprinkler; and, while it made a convenient arrangement of old operative parts, each part only did in the combination what it had done before, and the patent was held void in this court and in the supreme court, because it showed nothing but an aggregation of old parts. The bill is dismissed for want of equity.