958

In re MOORE.
Patent Appeal No. 2878.

Court of Customs and Patent Appeals.
Feb. 1, 1932.

William L. Symons, of Washington, D. C., for appellant.

T. A. Hostetler, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for the Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

GARRETT, Associate Judge.

This appeal is from a decision of the Board of Appeals of the United States Patent Office, affirming the decision of the examiner, rejecting the claims of appellant's application for a patent upon alleged new and useful improvements in electric furnaces. There are three claims, of which No. 7 is representative: "7. A tilting electric metallurgical furnace having an arcing electrode and a hearth or bottom comprising a metallic shell, a supporting layer of refractory material arranged within said shell, a superposed uniform layer of highly conducting carbonaceous material in direct contact with the charge, a layer of mortar interposed between the metallic shell and the supporting layer of refractory material, and a plurality of metal fins extending through said supporting layer and said layer of mortar, and being embedded in said layer of highly conducting carbonaceous material, whereby electric current may pass through said furnace shell to the layer of carbonaceous material and be widely distributed therethrough and whereby the various layers of said furnace bottom are effectively anchored to said furnace shell."

The references cited are:
Moore, 1304350, May 20, 1919.
Niblock, 1430104, September 26, 1922.
Sethman, 1481031, January 15, 1924.

Appellant's claims are for the combination of elements producing an electric furnace of the arc type for "carbonizing a metallic charge in any one of the several ways mentioned or by employing all of the several methods at the same time." Novelty is claimed to reside in the construction of the furnace bottom.

The bottom disclosed consists of (a) an outer shell formed of metal plates upon which is (b) a layer of refractory material, which in turn has upon it (c) an active layer of carbonaceous material, of substantially uniform high conductivity throughout, which contacts with the charge, and which is electrically connected with the outer metallic shell by means of (d) a plurality of metal strips of fins secured at one end to said outer shell and having their other ends embedded in the active layer of carbonaceous material. These fins extend through the refractory layer mentioned above as (b). This refractory layer is the supporting means of the active or top layer which active or top layer is the bottom proper, or hearth of the furnace.

Describing the operation for which the structure is designed, appellant's brief says:

"The molten or liquid charge 11 rests on the carbonaceous hearth 9, and a slag 12 containing lumps of solid carbonizing material 13 floats on the charge 11. When the charge is agitated in contact with the carbonaceous slag 12 on one side and the carbonaceous hearth 9 on the other side, it is very readily carbonized. Agitation may be effected by any suitable means, as by forcing a fluid through the pipe 14 and thence through the charge. The fluid used may be either a non-oxidizing or reducing gas such as nitrogen or hydrogen under pressure, or it may be in the nature of a hydrocarbon, either gaseous or liquid. A violent bubbling or ebullition of the charge is produced by the passage of the fluid therethrough, thus agitating the mass and bringing all parts thereof into intimate contact with both the carbonaceous bottom and the carbonizing slag.

"In addition to its carbonizing function,

the improved carbonaceous bottom is found to be highly resistant to both acid and basic slags. The metallic fins 10 serve not only to distribute the current throughout the carbonaceous bottom, but also to anchor securely the various portions of the bottom together and to the shell."

In the Moore patent cited as a reference, every element of the claims of the application appears to be present, but the arrangement of these elements differs somewhat in the two structures, particularly in the fact that the hearth (the top layer with which the charge contacts) is not of carbonaceous material, nor is it *highly* conducting. It is electrically conducting at high temperature only. The strata immediately underneath said hearth, however, is of a refractory material which is electrically conducting at ordinary temperatures. The structure shows fins, arranged very much as they are in the structure of the application.

The patent to Niblock is conceded by appellant to disclose a furnace bottom having a carbonaceous hearth, and some other features incident to appellant's claims, but it is argued that in said patent: "There is only one of the terminal members and the current is, therefore, not widely distributed throughout the hearth, nor is there any anchoring of the various furnace layers."

The patent to Sethman shows a structure in which there are alternative arrangements; that is to say, in one form the charge rests directly upon a carbonaceous layer, and in the other form there is a layer of lead between the charge and the carbonaceous layer.

The rejection by the tribunals of the Patent Office seems to have rested upon the ground that it did not involve patentable invention to provide the furnace of Niblock, showing a carbonaceous hearth member upon which the charge rests, with a plurality of conducting fins, such as are disclosed in both the patents to Moore and Sethman.

The brief of the Solicitor for the Patent Office says: "The rejection by the Board of Appeals on the combination of Moore and Niblock of course amounts to the same thing, whether stated in the form of no invention to put Moore's fins in Niblock's furnace or in the form of no invention to leave out Moore's layer 13 and allow the charge to rest directly on the layer of carbonaceous material in view of Niblock."

We are not convinced that there was error in the decision of the Board of Appeals. Appellant's structure or arrangement is one of elements, each of which, in the new relation, apparently performs the same function which it did in the prior art. That a better or more satisfactory result is obtained is doubtless true, but after all, as stated by the solicitor, in the brief: " * * * The result is merely the sum of a number of old results which in the patentable sense is still merely an old result."

Some authorities in point are Hailes v. Van Wormer, 20 Wall. (87 U. S.) 353, 22 L. Ed. 241; In re Isherwood, 40 F.(2d) 987, 17 C. C. P. A. 1187; In re Ackenbach, 45 F.(2d) 437, 18 C. C. P. A. 769. Numerous other cases are cited in the foregoing opinions.

Appellant has here relied strongly upon the case of In re Champeau, 34 F.(2d) 1012, 17 C. C. P. A. 568. It seems sufficient to say that there it was found that the new combination produced a new and useful result which we regarded as evidencing more than mere mechanical skill. Here nothing more than mechanical skill in the adjustment of parts, whose respective functions were well known, appears to be present.

The decision of the Board of Appeals is affirmed.

Affirmed.